**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

**Brian Pearson**

     v.

Case No. 21-cv-567-PB
Opinion No. 2022 DNH 039

**Tyler Eldridge**

**MEMORANDUM AND ORDER**

Brian Pearson has sued Tyler Eldridge, an officer with the Ossipee Police Department, under 42 U.S.C. § 1983 for allegedly violating his Fourth Amendment rights to be free from unreasonable seizures and excessive force. Eldridge has moved for judgment on the pleadings based on qualified immunity. Because Eldridge has not established that qualified immunity shields him from suit, I deny the motion.

## I.   BACKGROUND[1]

Late one summer night, Pearson drove his truck to the Top Cat Car Wash in Ossipee, New Hampshire. This was a 24-hour facility that offered self-serve vacuums and trash receptacles in a well-lit parking lot behind the car wash. Pearson parked next to one of the vacuums, took out some of his belongings and placed them on the ground nearby, and began cleaning the interior of his truck.

---

[1] The facts are taken from Pearson's complaint and construed in his favor. See Kando v. R.I. State Bd. of Elections, 880 F.3d 53, 58 (1st Cir. 2018).

While Pearson was cleaning his truck, Eldridge sped into the parking lot, parked his police cruiser close to Pearson, and approached him.  Eldridge immediately asked Pearson what he was "up to" and pointed to a baseball bat laying on the ground with Pearson's other things.  Pearson responded that he was cleaning his truck.  Eldridge then asked Pearson if he had any identification on him.  Pearson said he did, but before he could get his driver's license, Eldridge took out his handcuffs and told Pearson that he would conduct a pat-down search.  When Pearson asked why, Eldridge told him to "relax."  After he handcuffed Pearson, Eldridge informed him that he was being detained because he was parked at the car wash late at night, had a lot of stuff around, was "animated," and was not familiar to Eldridge.  Pearson disputes that he was animated.

Eldridge then instructed Pearson to go to the police cruiser, lean against it, and spread his feet.  After Pearson complied, Eldridge asked him for his name.  Pearson did not respond at first, but he gave his full name when asked a second time.  Eldridge then quickly gave Pearson the Miranda warnings. Immediately after, without provocation, Eldridge violently threw Pearson against the hood of the police cruiser.  He held Pearson face-down on the hood, with his body weight on Pearson's back and his hand on Pearson's neck, until two other officers arrived on the scene a few minutes later.  The encounter ended with

Eldridge taking Pearson to a local jail under the pretext of taking him into protective custody.

Pearson eventually filed this action in state court, which Eldridge removed to federal court. Pearson alleges that Eldridge detained him without sufficient justification and used excessive force in violation of the Fourth Amendment. Eldridge now moves for judgment on the pleadings, and Pearson objects.

## II. <u>STANDARD OF REVIEW</u>

A party may move for judgment on the pleadings at any time "[a]fter the pleadings are closed--but early enough not to delay trial." Fed. R. Civ. P. 12(c). A motion for judgment on the pleadings is subject to the same standard of review as a motion to dismiss for failure to state a claim under Rule 12(b)(6). Kando v. R.I. State Bd. of Elections, 880 F.3d 53, 58 (1st Cir. 2018). Accordingly, when a defendant moves for judgment on the pleadings, I must accept the complaint's well-pleaded factual allegations as true and draw all reasonable inferences in the plaintiff's favor. R.G. Fin. Corp. v. Vergara-Nuñez, 446 F.3d 178, 182 (1st Cir. 2006). I may enter judgment on the pleadings "only if the uncontested and properly considered facts conclusively establish the movant's entitlement to a favorable judgment." Aponte-Torres v. Univ. of P.R., 445 F.3d 50, 54 (1st Cir. 2006).

### III. <u>ANALYSIS</u>

Eldridge argues that he is entitled to judgment on the pleadings on Pearson's § 1983 claims because qualified immunity shields him from lawsuit. His argument fails to appreciate that the immunity analysis at this early stage is based on how a reasonable officer in his position would view the case given Pearson's version of events, as described in the complaint. If Pearson's allegations are true and no mitigating factors are later established, the qualified immunity defense would fail.

The qualified immunity doctrine "protects government officials from trial and monetary liability unless the pleaded facts establish '(1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct.'" Marrero-Mendez v. Calixto-Rodriguez, 830 F.3d 38, 43 (1st Cir. 2016) (quoting Ashcroft v. al-Kidd, 563 U.S. 731, 735 (2011)). The "clearly established" requirement is satisfied when "the legal contours of the right in question were sufficiently clear that a reasonable officer would have understood that what he was doing violated the right," and "in the particular factual context of the case, a reasonable officer would have understood that his conduct violated the right." Stamps v. Town of Framingham, 813 F.3d 27, 34 (1st Cir. 2016) (quoting Mlodzinski v. Lewis, 648 F.3d 24, 32-33 (1st Cir. 2011)). Although a "case directly on

4

point" is unnecessary to pierce qualified immunity, "existing
precedent must have placed the statutory or constitutional
question beyond debate." Mullenix v. Luna, 577 U.S. 7, 12
(2015) (quoting al–Kidd, 563 U.S. at 741).

 The complaint asserts two Fourth Amendment claims.  First,
it alleges that Eldridge's detention of Pearson, from the time
he was handcuffed until he was released from custody, amounted
to an unreasonable seizure.  I construe that claim to challenge
Pearson's initial detention as an unlawful Terry stop and his
subsequent incarceration as unlawful protective custody.
Second, the complaint alleges that Eldridge used excessive force
when he slammed Pearson against the police cruiser.  I analyze
Eldridge's qualified immunity defense as to each set of claims
in turn.

**A.   Unreasonable Seizure Claim**

 Pearson asserts that Eldridge, while acting under color of
state law, violated his constitutionally protected right to be
free from unreasonable seizures.  Eldridge assumes that his
seizure of Pearson would be unreasonable absent probable cause.
As described in the complaint, however, the encounter began as
an investigative Terry stop, which required only reasonable
suspicion.  See United States v. Pontoo, 666 F.3d 20, 26 (1st
Cir. 2011).  The subsequent taking of Pearson into protective

custody, however, required probable cause.  See Alfano v. Lynch, 847 F.3d 71, 77 (1st Cir. 2017).

      1.   Investigative Stop

    A police officer may stop and briefly detain an individual based on reasonable suspicion that the individual has committed, or is about to commit, a crime.  Terry v. Ohio, 392 U.S. 1, 27 (1968); Pontoo, 666 F.3d at 26.  As part of a Terry stop, the police may frisk a temporarily detained suspect if they have reason to believe that the suspect may be armed and dangerous. United States v. Romain, 393 F.3d 63, 71 (1st Cir. 2004). Reasonable suspicion requires "specific and articulable facts" that would lead a reasonable police officer in the circumstances to suspect that criminal activity is afoot.  United States v. Ramdihall, 859 F.3d 80, 91 (1st Cir. 2017) (quoting Pontoo, 666 F.3d at 28).

    The facts alleged in the complaint, if credited, establish that Eldridge conducted an unlawful Terry stop and frisk. Contrary to Eldridge's suggestion, a reasonable officer in his position would not have suspected that Pearson was loitering at the time of the stop.  Under New Hampshire law, a person is guilty of loitering "if he knowingly appears at a place, or at a time, under circumstances that warrant alarm for the safety of persons or property in the vicinity."  N.H. Rev. Stat. Ann. § 644:6, I.  There was no indication that Pearson had engaged or

intended to engage in an activity that threatened public safety.
The complaint alleges that Pearson was patronizing a business
during its regular hours for the legitimate purpose of cleaning
his vehicle.  He did not try to conceal his presence there or
otherwise act in a suspicious manner.  When Eldridge inquired,
Pearson accounted for his presence at the car wash by explaining
that he was cleaning his truck.  That explanation fit Pearson's
actions at the time.  His truck was parked next to a self-serve
vacuum, and he was using it to clean its interior.  The presence
of a baseball bat, which Pearson had taken out of his truck with
his other things and placed on the ground nearby before Eldridge
arrived, was not enough to raise alarm.  Under the
circumstances, the only reasonable inference was that Pearson
had taken his belongings out of his truck so that he could more
easily clean the interior.  Without more, a reasonable officer
would not have believed that he needed to handcuff and frisk
Pearson.

     Eldridge leans heavily on the complaint's acknowledgment
that he had described Pearson as "animated" and told him to
"relax."  But the complaint does not admit that Pearson was
actually animated; instead, it alleges that Eldridge's assertion
was a mere pretext for his actions.  Eldridge may have a
different view of the facts, but at this point, I cannot credit
his version of the encounter.  See Norton v. Rodrigues, 955 F.3d

176, 184 (1st Cir. 2020) (when defendant invokes qualified
immunity on summary judgment, "the court must determine whether
the plaintiff's version of the facts makes out a violation of a
protected right") (cleaned up).

Eldridge also points out that he needed to ask Pearson
twice for his name as evidence that Pearson had disobeyed a
police officer, in violation of Chapter 265:4 of the New
Hampshire Revised Statutes.  Pearson's brief refusal to identify
himself, however, came only after he was handcuffed.  It,
therefore, cannot provide justification for the Terry stop.  See
Pontoo, 666 F.3d at 26 (noting that a Terry stop "must be
justified at its inception").

Even if Pearson's version of the events would support a
finding that the investigative stop was unlawful, Eldridge
argues that he should prevail because the right at issue was not
clearly established at the time of the encounter.  I disagree.
In terms of the clarity of the law in general, a reasonable
officer would know that it is unconstitutional to stop,
handcuff, and frisk a person without reasonable suspicion.  See
Terry, 392 U.S. at 30.  Applying that law, a reasonable officer
in Eldridge's shoes would have realized that there were
insufficient articulable facts to suspect Pearson of criminal
activity or dangerousness.  Put differently, the presence of
reasonable suspicion was not even "arguable" here.  See Eldredge

v. Town of Falmouth, 662 F.3d 100, 106 (1st Cir. 2011).
Accordingly, at this time, qualified immunity cannot bar the
claim that the Terry stop was illegal.

     2.  Protective Custody

     Pearson also alleges that Eldridge violated his right to be
free from unreasonable seizures when he took Pearson into
protective custody.  The protective custody statute permits an
officer who "encounters a person who, in the judgment of the
officer, is intoxicated" to "take such person into protective
custody," including booking the person into a local jail for up
to 24 hours.  N.H. Rev. Stat. Ann. § 172-B:3, I.  The statute
defines "intoxicated" to mean "a condition in which the mental
or physical functioning of an individual is substantially
impaired as a result of the presence of alcohol in his system."
Id. § 172-B:1, X.

     The Fourth Amendment "requires officers acting under a
civil protection statute to have probable cause before taking an
individual into custody of a kind that resembles an arrest."
Alfano, 847 F.3d at 77; see Fredyma v. Hurley, 2019 DNH 043,
2019 WL 1171415, at *4 (D.N.H. Mar. 13, 2019) (holding that
protective custody under N.H. Rev. Stat. Ann. § 172-B:3 requires
probable cause).  A police officer has probable cause to take a
person into protective custody if, based on the totality of the
information known to the officer, he has a reasonable basis to

believe that the person is intoxicated.  See United States v. Diallo, 29 F.3d 23, 25 (1st Cir. 1994).

Eldridge argues that he had probable cause to believe that Pearson was intoxicated.  But the complaint does not admit that Pearson was either intoxicated or appeared to be so.  On the contrary, Pearson alleges that Eldridge took him into protective custody under pretext.  If I credit Pearson's allegations, there were no facts from which a reasonable officer in Eldridge's position could have believed that placing Pearson into protected custody was warranted.

The second prong of the qualified immunity analysis does not favor Eldridge either.  A reasonable officer would have been on clear notice that taking a person into protective custody absent probable cause to believe that the person is intoxicated was unconstitutional.  See Alfano, 847 F.3d at 77.  It also would have been sufficiently clear that the presence of probable cause was not even "arguable" in this case.  See McInnis v. Maine, 638 F.3d 18, 22 (1st Cir. 2011).  Thus, Eldridge is not entitled to judgment on the pleadings as to the unreasonable seizure claim.

## B.   Excessive Force Claim

A Fourth Amendment excessive force claim requires proof that "the defendant officer employed force that was unreasonable under the circumstances."  Kenney v. Floyd, 700 F.3d 604, 609

(1st Cir. 2012) (cleaned up).  Courts must assess the reasonableness of a use of force "from the perspective of a reasonable officer on the scene" and must account "for the fact that police officers are often forced to make split-second judgments — in circumstances that are tense, uncertain, and rapidly evolving — about the amount of force that is necessary in a particular situation." Graham v. Connor, 490 U.S. 386, 396–97 (1989).  To evaluate the reasonableness of the force used, courts consider (1) "the severity of the crime at issue"; (2) "whether the suspect poses an immediate threat to the safety of the officers or others"; and (3) "whether the suspect is actively resisting arrest or attempting to evade arrest by flight." Ciolino v. Gikas, 861 F.3d 296, 302 (1st Cir. 2017) (quoting Graham, 490 U.S. at 396) (cleaned up).

Assuming the truth of the allegations, Eldridge used excessive force against Pearson.  Pearson was handcuffed and compliant when Eldridge suddenly and without provocation violently slammed him against the police cruiser and held him pinned in that position for several minutes.  Pearson had committed no crime and showed no attempt to resist or flee when Eldridge used significant force to subdue him.  In those circumstances, a reasonable officer in Eldridge's position "would have taken a more measured approach." Id. at 304.

Eldridge likewise cannot prevail on the second prong of the qualified immunity test.  The legal contours of the right to be free from the use of excessive force were clearly established. Morelli, 552 F.3d at 23-24.  Indeed, "the conduct was such an obvious violation of the Fourth Amendment's general prohibition on unreasonable force that a reasonable officer would not have required prior case law on point to be on notice that his conduct was unlawful."  Raiche v. Pietroski, 623 F.3d 30, 38 (1st Cir. 2010) (cleaned up).  Nor does the complaint reveal any circumstances that would support Eldridge's use of force as reasonable.  See id. at 39-40.  Crediting Pearson's allegations and drawing all reasonable inferences in his favor, "the level of force chosen by the officer cannot in any way, shape, or form be justified," which precludes the qualified immunity defense at this stage.  See Morelli, 552 F.3d at 24.

### IV.  CONCLUSION

For the foregoing reasons, the defendant's motion for judgment on the pleadings (Doc. No. 6) is denied.

SO ORDERED.

/s/ Paul J. Barbadoro
Paul J. Barbadoro
United States District Judge

March 28, 2022

cc:  Counsel of record